IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **BRYAN KAWAND SIMS,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | CIVIL No: 5:13-cv-00385-CAR-CHW |
| **BRIAN OWENS, et. al.,** | : | |
| | : | |
| | : | PROCEEDINGS UNDER 42 U.S.C. §1983 |
| **Defendants** | : | BEFORE THE U. S. MAGISTRATE JUDGE |

## REPORT AND RECOMMENDATION

Plaintiff Bryan Kawand Sims filed an action pursuant to 42 U.S.C. §1983 and the Religious Land Use and Institutionalized Person act ("RLUIPA"), 42 U.S.C. § 2000cc et seq, against Defendants Owens, Oubre, and Price seeking relief from the Georgia Department of Corrections ("GDOC") inmate grooming policy.[1] Plaintiff is currently confined at Baldwin State Prison and claims that he has been prevented from maintaining a one-inch patch of hair on his chin ("goatee") in accordance with his religious beliefs. Currently before the Court is Defendants' Motion for Summary Judgment. Because Plaintiff has failed to show that the current grooming policy burdens his sincerely held religious beliefs, it is **RECOMMENDED** that the Motion for Summary Judgment of Defendants Owens, Oubre, and Price (Doc. 48; 49) be **GRANTED**.

### I.   PROCEDURAL HISTORY

Plaintiff filed the instant action on October 10, 2013, alleging that his free exercise of religion was impermissibly violated by GDOC policy preventing him from growing three foot long dreadlocks and a goatee. The Court conducted a frivolity review pursuant to Section 1915A

---

[1] Plaintiff's Section 1983 claims were dismissed and only his RLUIPA claims remain. All claims have been dismissed as to Defendant Duncan. Doc. 25; 29.

and Plaintiff was allowed to proceed with his claims. On December 19, 2013, Defendants filed a motion to Dismiss, which was granted as to Plaintiff's dreadlocks claim on June 6, 2014. (Doc. 25, 29). Defendants then filed a Motion for Summary Judgment on November 12, 2014. (Doc. 31).

The Court issued a Notice of Summary Judgment Motion to Plaintiff (Doc. 32), explaining that a motion for summary judgment had been filed and that under Rule 56 of the Federal Rules of Civil Procedure "the party opposing summary judgment must respond by filing affidavits, depositions, or other materials to persuade the Court that the case must be presented to a jury for resolution." The Notice further observed that "Rule 56 provides that you may NOT oppose summary judgment simply by relying on the allegations in your pleadings." The Notice included a warning, in all capital letters, that "THE CLAIMS YOU ASSERT IN YOUR PLEADINGS MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THE MOTION." Despite this notice, Plaintiff did not file a response to the first Motion for Summary Judgment and did not submit any evidence to support his claims.

Before the Court ruled on the first Motion for Summary Judgment, the Supreme Court decided *Holt v. Hobbs,* 135 S. Ct. 853 (Jan 20, 2015). In response to that decision, the Court ordered Defendants to supplement their Motion and Plaintiff to file a response to Defendants' supplement. (Doc. 33). In a motion for extension of time to file their supplement, Defendants advised the Court that the GDOC was in the process of changing their grooming policy in light of *Holt.* (Doc. 34). The Court then held a hearing to clarify issues concerning *Holt* and the GDOC's decision to amend the men's grooming policy.

At the hearing, the Court directed Defendants to withdraw their Motion for Summary Judgment and to refile it in light of the new legal and factual developments. Plaintiff was also advised that he could file a Motion for Reconsideration for his dismissed dreadlocks claim.

Plaintiff's Motion for Reconsideration was denied in light of Eleventh Circuit case law foreclosing his claim. Doc. 46.

Defendants refiled their Motion for Summary Judgment on November 19, 2015. (Doc. 48, 49). The Court sent another Notice of Summary Judgment Motion, including the same warning about Plaintiff's responsibility to "respond by filing affidavits, depositions or other materials to persuade the Court that the case must be presented to a jury for resolution." Despite this notice, Plaintiff did not respond to the Motion for Summary Judgment, and has had no communication with the Court since the denial of his Motion for Reconsideration in September 2015. Doc. 45.

## II.   LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to

3

support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See *id.* (citing *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. *Peek–A–Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla.*, 630 F.3d 1346, 1353 (11th Cir. 2011).

The Eleventh Circuit recognizes that "[a] district court has inherent authority to manage its own docket 'so as to achieve the orderly and expeditious disposition of cases.'" *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, (1991)). This authority includes the power to dismiss a case for failure to prosecute or failure to comply with a court order. Id. (citing Fed.R.Civ.P. 41(b)); see also *Hyler v. Reynolds Metal Co.*, 434 F.2d 1064, 1065 (5th Cir. 1970) ("It is well settled that a district court has inherent power to dismiss a case for failure to prosecute...."). Finally, "dismissal without prejudice [is] appropriate" pursuant to Rule 41(b) where a plaintiff has failed to comply with a court order, "especially where the litigant has been forewarned." *Owens v. Pinellas Cnty. Sheriff's Dep't*, 331 F. App'x 654, 655 (11th Cir. 2009) (per curiam ) (citing *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989)).

Despite the Court's warnings in its Notice of Motion for Summary Judgment, Plaintiff has filed no response in opposition to the Motion and has presented no "affidavits, depositions, or other materials to persuade the Court that the case must be presented to a jury for resolution." Nevertheless, the Court "cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir.

4

2004) (citation omitted). Specifically, the Court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir.2009) (citation omitted). In an excess of caution, the Court will consider as evidence statements in a previously filed "affidavit" (Doc. 18) and statements Plaintiff made during the hearing on June 4, 2015 (Transcript at Doc. 40).

### III. BACKGROUND

At the time Plaintiff filed the current action, the GDOC grooming policy was governed by SOP IIB01 – 0011 which became effective on March 1, 2005. (Doc. 16-2, p. 2). According to the "Hair Care Guidelines for Male Inmates/Probations" section of this Policy:

1. Each inmate shall have a conventional haircut.
    a. Hair shall not be longer than three (3) inches.
    b. Hair shall not extend beyond a point, which would reach the collar on an ordinary shirt.
    c. Hair shall not cover any part of the ears or eyebrows.
2. Inmates may wear sideburns no longer than a point even with the bottom of the ear canal.
3. Mustaches are permitted, but shall not extend beyond the edge of the mouth and must be kept neat and trimmed at all times.
4. Goatees, beards, and similar facial adornments are prohibited, unless medically indicated.

(Doc. 16-2, p. 7)

After Plaintiff filed his claim, but before the Court ruled on Defendants' Motion for Summary Judgment, the United States Supreme Court decided *Holt v. Hobbs*, 135 S. Ct. 853 (Jan 20, 2015). The Petitioner in *Holt*, a Muslim inmate in Arkansas, sought to grow a beard one-quarter inch in length, in accordance with his faith but contrary to Arkansas Department of

Correction's grooming policy. *Id*. at 857. Because the Department did not show that the Arkansas DOC's grooming policy furthered "the department's interest in rooting out contraband," could not show "that forbidding very short beards is the least restrictive means of preventing the concealment of contraband," and did not adequately prove the policy served its other security interests through the least restrictive means, it was found to violate the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).

Following the decisions in *Holt*, the GDOC changed its grooming policy. Effective on August 18, 2015, Policy 228.02 sets out "Hair Care Guidelines for Male Offenders" as follows:

1. Each male offender shall satisfy the following guidelines unless otherwise authorized through the request procedure in S.O.P. VA01-0011 (106.11), "Special Religious Request."

2. Each offender shall have a convictional haircut.

    a. Hair shall not be longer than three (3) inches.

    b. Hair shall not extend beyond the point that would reach the collar on an ordinary shirt.

    c. Hair shall not cover any part of the ears or eyebrows

3. Offenders may wear sideburns no longer than at a point even with the bottom of the ear canal

4. Offenders will be permitted facial hair, provided that the following standards are adhered to:

    a. Facial hair shall be kept clean and neat. Facial hair shall not be trimmed or styled in any manner except as outlined in this policy. If an offender cannot grow a full beard, he must keep it shaved even throughout his face. The mouche, which is the facial hair under the lower lip, may be worn with the beard and cannot be worn alone without facial hair. This means offenders may not trim or style facial hair to depict symbols, numbers, letters, lines, unusual shapes such as the goatee, or any other such styles and alterations not expressly permitted by this policy.

    b. Mustaches worn without a beard are permitted. The mouche cannot be worn without the beard. Mustaches shall not extend beyond the corners of the mouth and shall be kept neat and trimmed at all times. When a mustache and beard are worn

together, they cannot be shaved to disconnect them.

c. Beards are permitted and shall be worn full. The Beard shall be lined above the Adam's apple. Beards cannot be worn without a mustache. The beard shall be lined and neatly groomed. The Mouche cannot be worn without the beard.

d. Facial hair shall be no longer than one-half (1/2") in length and cannot visibly obscure or distort facial contours. (See Attachment 5, Male Grooming Standards Diagrams A and B)

e. Offender I.D. Cards shall be reviewed on an on-going basis to determine if a new card needs to be issued due to changes in the physical appearance including the growth of facial hair. If physical appearance is noticeably different, a new card shall be issued. See S.O.P. (221.03-IIB01-0019), Offender Photo Identification Card.

f. Offenders who do not adhere to the guidelines above will receive disciplinary action.

(Doc. 49-4). Thus, as the Defendants recognize, the new policy prohibits Plaintiff's practice of maintaining a one-inch patch of hair on his chin.

**IV. DISCUSSION**

Plaintiff seeks to grow a one-inch goatee, which is not a permissible grooming style according to the GDOC's men's grooming policy. Plaintiff argues that GDOC policy violates his rights under RLUIPA by placing a substantial burden on the free exercise of his religion. Defendants assert that they are entitled to summary judgement because (1) Plaintiff's request is aesthetic rather than religious, (2) the GDOC's grooming policy does not place a substantial burden on Plaintiff's religious practices, and (3) if Plaintiff's religious practices are substantially burdened, the GDOC policy is the least restrictive means of furthering a compelling government interest.

In *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872 (1990)) the Supreme Court "largely repudiated the method of analysis used in prior free exercise cases" which "employed a balancing test that considered whether a challenged government action that

7

substantially burdened the exercise of religion was necessary to further a compelling state interest." *Holt*, 135 S. Ct. at 859 (2015) (citing *Wisconsin v. Yoder*, 406 U.S. 205 (1972)). *Smith* held that "neutral, generally applicable laws that incidentally burden the exercise of religion usually do not violate the Free Exercise Clause of the First Amendment." *Holt*, 135 S. Ct. at 859 (citing *Smith* 494 U.S. at 872). In response to *Smith*, Congress passed the Religious Freedom Restoration Act of 1993 (RFRA), which prohibited the "government [from] substantially burden[ing] a person's exercise of religion if the burden results from a rule of general applicability." *Burwell v. Hobby Lobby Stores, Inc*. 134 S. Ct. 2751, 2761 (2014). In *City of Boerne v. Flores, 521 U.S. 507 (1997),* the Supreme Court held that the RFRA exceeded Congress' power under Section 5 of the Fourteenth Amendment, which Congress relied on to make the RFRA applicable to the States. *Id.*

Congress responded by passing RLUIPA.[2] RLUIPA offers "expansive protection for religious liberty" and applied to the States under the Spending and Commerce Clauses. *Holt*, 135 S. Ct. at 860. Pursuant to RLUIPA, "No government shall impose a substantial burden on the religious exercise of a person" unless the imposition of the burden "is in furtherance of a compelling governmental interest; and is the least restrictive means of further that compelling government interest." 42 U.S.C. 2000cc-1.

Under the RLUIPA, the plaintiff bears the burden of persuasion concerning whether the "government practice that is challenged by the claim substantially burdens the exercise of religion." *Id.* If the Plaintiff establishes a prima facie case, the burden then shifts to the government to demonstrate that the action is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. If the Plaintiff fails to establish a prima

---

[2] "RLUIPA [] allows prisoners 'to seek religious accommodations pursuant to the same standard as set for in RFRA.'" *Hol*t, 135 S. Ct. at 860 (quoting *Gonzales v. O Centro Espirita Beneficente Unio do Vegetal*, 546 U.S. 418 (2006) (internal quotation marks in original).

facie case through evidence, then the Court need not consider whether the governmental interest is compelling or the least restrictive means. *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1228 (2004). RLUIPA broadly defines a religious exercise as "any exercise of religions, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). The concept "shall be construed in favor of a broad protection of religious exercise." 42 U.S.C. § 2000cc–3(g).[3]

    *i.     Religious Exercise*

Plaintiff has failed to present evidence that his religious beliefs mandate a goatee rather than the full beard permitted by the GDOC grooming policy. Because Plaintiff did not respond to Defendants' renewed Motion for Summary Judgment, the only evidence presented by Plaintiff comes from an affidavit he submitted in 2014, prior to the change of policy in response to *Holt* (Doc. 18) and in his statements at the hearing on June 4, 2015. Plaintiff's pleadings and statements present an imprecise and somewhat confusing account of his religious practices and beliefs. Two general proscriptive tenants of Rastafarianism affect the way Plaintiff grooms his facial hair. Plaintiff "cannot touch a razor to his face," and the Rastafarian community generally believes that adherents should not remove any of their facial hair. Plaintiff seeks to maintain a one inch patch of hair on his chin while removing the rest with a depilatory substance. Plaintiff contends that maintaining a goatee is also a more "presentable" manner of grooming for Plaintiff due to the physical characteristics of his facial hair.

Defendants argue that Plaintiff's practice of maintaining a goatee is not motivated by religious belief nor substantially burdened by the GDOC grooming policy. Because Plaintiff removes the hair from the sides of his face with a depilatory substance, Defendants infer that

---

[3]RLUIPA "affords confined persons greater protection of religious exercise than what the Constitution itself affords." *Smith v. Allen*, 502 F.3d 1255, 1266 (11th Cir. 2007) (internal citation and quotations omitted) (abrogated on other grounds by *Sossamon v. Texas*, 131 S. Ct. 165 (2011)).

9

Plaintiff's religious beliefs allow him to shave his entire face with a depilatory substance. Likewise, because Rastafarians generally believe that they should not remove the hair from their face, Defendants infer that growing a full beard is consistent with Plaintiff's religion. Under the new GDOC policy, Plaintiff may may grow a full beard up to one half inch in length or remain clean shaven with a depilatory substance. Defendants, therefore, argue that the GDOC grooming policy allows Plaintiff two different manners of grooming his facial hair which are consistent with his religious beliefs.

This Court is not prevented from inquiring into "the sincerity of prisoner's professed religiosity," but it is not the role of this Court to interpret ecclesiastical questions of whether Plaintiff's practices precisely comports with widely recognized religious tenets See *Benning v. Georgia*, 845 F. Supp. 2d 1372, 1378 (2012) (citing *Jackson v. Mann*, 196 F.3d 316, 321 (2nd Cir. 1999)). Therefore, the Court considers Plaintiff's statements of his beliefs and his practices to determine whether his request for a goatee is motivated by a sincerely held religious belief.

Plaintiff shows that he has been practicing Rastafarianism since at least 2013 when he filed an administrative grievance seeking a religious exception to the GDOC grooming policy. Doc. 18-1, p. 4. In a "sworn affidavit" dated December 30th, 2013, Plaintiff declared that his beliefs prevented him from allowing a razor to contact his skin and that he was only willing to shave with a "depilatory substance." Doc. 18-2, pp. 3-4. At the Motion hearing held on June 4th, 2015, Plaintiff attempted to clarify how his religious beliefs impact his request to grow a goatee. He stated that the practice resulted from both his belief that a razor should not touch his face and the general belief that he should not remove the hair from his face. Doc. 40, pp. 9 – 12. He indicated that his desire to grow a goatee was based on his appearance, stating, "I – truly it's more presentable for me to have a goatee regardless, and I do not grow a full beard." Doc. 40, p. 12. He

has never stated that his understanding of the tenets of Rastafarianism require him to have a goatee rather than a full beard.

Plaintiff does not have to provide a precise articulation of his religious beliefs for his behavior to constitute protected "religious practices" within the meaning of RLUIPA. *Thomas v. Review Bd. Of Indiana Emp. Dec. Div.*, 450 U.S. 707, 714 (1981). ("Courts should not undertake to dissect religious beliefs because the believer admits he is 'struggling' with his position or because his beliefs are not articulated with the clarity and precision that a more sophisticated person might employ."). RLUIPA protects religious beliefs beyond those "shared by all members of a religious sect," *Id.*, and RLUIPA protects those behaviors which hold religious meaning but are not strictly mandated. 42 U.S.C. § 2000cc-5(7). Plaintiff's beliefs have lead him to draw a line with regard to his grooming habits and this Court cannot declare that "line [Plaintiff] drew was an unreasonable one" or that his beliefs and practices are illogical. *Yellowbear v. Lampert*, 741 F.3d 48, 55 (10th Cir. 2014); see also *Wilkinson v. Sec., Fla, Dept. of Corr.*, 622 F. App'x. 805, 814 (11th Cir. 2015) (finding substantial burden where Plaintiff was allowed to observe holy days in private, but Plaintiff alleged his beliefs lead him to celebrate holy days with the community).

Nevertheless, Plaintiff has failed to show that even his personal religious beliefs rather than personal preference lead him to grow a goatee rather than a full beard. He has asserted either that he may not allow a razor to contact his skin or that he may not remove the hair from his face. The GDOC policy neither requires him to use a razor nor to remove hair from his face. He is permitted to grow a half-inch beard over his entire face or to remove the hair from his entire face with a depilatory cream rather than a razor. Plaintiff has not met his burden of showing, by presenting evidence sufficient to create a genuine issue of material fact, that his practice of maintaining a goatee is based on a sincerely held religious belief.

11

### ii.   *Substantial Burden*

Plaintiff has likewise failed to present sufficient evidence to create a genuine issue of material fact as to whether the GDOC grooming policy imposes a substantial burden on his religious exercise. It is well recognized that an "individual's exercise of religion is 'substantially burdened if a regulation completely prevents the individual from engaging in religiously mandated activity, or if the regulation requires participation in an activity prohibited by religion.'" *Midrash,* 366 F.3d at 1226 (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1522 (11th Cir. 1995). Under RLUIPA, a substantial burden exists when a regulation places more than a mere inconvenience on religious practices and constitutes "significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." *Id*. at 1227. A substantial burden may result when adherents are forced to forego religious precepts or practices. See *id.*

As noted above, the only evidence in the record shows that the GDOC policy does not burden Plaintiff's religious beliefs. Plaintiff's own representations, in court and in his affidavit, show that his religious beliefs permit him either to grow a full beard or to remove facial hair with a depilatory substance so long as no razor is used. Because both of these practices are allowed under the new GDOC policy, Plaintiff is not being pressured to forgo religious practices or otherwise conform his behavior. There is no evidence in the record to support a finding that Plaintiff's religious beliefs lead him to groom a partial beard or goatee. He seeks to groom a goatee because he considers it a more presentable style than a full beard.

### iii.   *Compelling Government Interest and Least Restrictive Means*

Because Plaintiff has not met his burden of showing that the GDOC grooming policy substantially burdens the free exercise of his religion, there is no need to consider whether the policy "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive

means of furthering that compelling governmental interest." *Hol*t, 135 S. Ct. at 863. Defendants argue that the "grooming policy remains driven by the need to maintain order, discipline, and safety within its facilities." (Doc. 49, p. 11). According to Defendants, "Security Threat Groups such as gangs" use outward appearance to identify each other. Methods of identification include "tattoos, hand gestures, and designs in facial and head hair." (Doc. 49-6, p. 3). In an attempt to retard the ability of gang members to identify each other, the GDOC has implemented a uniform grooming policy placing constraints on how inmates may groom their hair. According to Defendants, Plaintiff's request would frustrate these efforts.

Defendants present two affidavits in support of their position. The first Affidavit, from Derek McKinney, the GDOC's Statewide Security Threat Group Coordinator in the Criminal Intelligence Unit, provides generic information concerning the quantity of "documented" gangs and gang members within the GDOC since January 2015. The "Department has documented 5144 incidents involving at least one member of a recognized gang."[4] Doc. 49-1, p. 3. Mr. McKinney asserts that "facial hair designs continue to be a method of identification for some gangs," and the Department's policies requiring "uniformity in dress and grooming helps reduce gang activity within the facilities." Doc. 49-6, p. 2-3. A second affidavit from Steven Upton, the Georgia Department of Corrections Director of Field Operations, explains the new GDOC men's grooming policy and states that "facial hair designs are often used as a method of identification for Security Threat Groups, such as gangs." Doc. 49-1. Neither Mr. McKinney nor Mr. Upton presents information that goatees are used by, have been used by, or are likely to be used by gangs or "security threat groups" for identification purposes.

Based on these Affidavits, Defendants argue that a deviation from their grooming policy

---

[4]Mr. McKinney's Affidavit does not present information concerning how many of the incidents involving gang members were motivated by gang concerns or related to gang membership.

13

may facilitate gang indentification. This argument is based on a general assertion that gangs use facial hair depicting symbols, numbers, letters, lines, and unusual shapes to identify each other. Because "GDC staff reports that uniformity in dress and grooming helps reduce gang activity within the facilities," Defendants conclude that they have a compelling interest in preventing Plaintiff from maintaining a goatee.

Because the current GDOC policy accommodates Plaintiff's religious beliefs as he has explained them, the Court need not consider, at this time, whether there are genuine issues of material fact as to the interests served by the policy or the existence of less restrictive means to further those interests.

## CONCLUSION

Because the evidence in the record shows that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law, it is **RECOMMENDED** that the Motion for Summary Judgment of Defendants Owens, Oubre, and Price (Doc. 48; 49) be **GRANTED**.

Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for

plain error if necessary in the interests of justice."

      **SO RECOMMENDED**, this 22nd day of July, 2016.

                                                s/ Charles H. Weigle
                                                Charles H. Weigle
                                                United States Magistrate Judge